All right, you can be seated. The next case we'll hear, Austin v. Experian and Mr. Roth, whenever you're ready. May it please the Court, Yakov Roth on behalf of Experian. Your Honors, this is really a simple and routine case that, in our judgment, just went off the rails below. Experian filed a motion to compel arbitration based on a contract that we say Mr. Austin entered when he signed up for a free credit monitoring service online. And the motion turned on only three facts. Number one, that he signed up. Number two, that in order to sign up, you have to go to the website, put in your personal information, and click a button. And number three, that the terms of use that we say clicking the button assents to, that's a legal issue we can come back to at the end, included an arbitration clause. Those are the three facts. And to prove those three facts, Experian submitted a declaration from David Williams, a corporate executive at the company with whom Austin contracted, who cited his personal knowledge of these facts based on his 20 plus years working for the company and his review of the corporate business records. And in response, Mr. Austin did not deny any of those three facts. Now, in our view, that is a one-sided record that should have resulted in an order of compelling arbitration. It was enough for more than 50 other federal courts from New York to California that have looked at cases like this. But the district court here excluded the declaration and on that basis denied the motion. The court said that Mr. Williams lacked personal knowledge of these facts or didn't sufficiently explain why he had personal knowledge of these facts. And the district court also objected that the declaration didn't attach the business records that he said he had reviewed. And we think there are a series. I'm sorry, Your Honor. Who's he? Yeah, he doesn't dispute that he signed up. I think it helps us. I think the fact that he doesn't dispute any of these facts helps us. So Mr. Austin didn't deny signing up. He didn't deny that the website looked the way we said the website looked. And he didn't deny that the terms of use included an arbitration clause. If he had denied some of those facts, then we might have a dispute of material fact and then we would need to have a jury trial on arbitrability. There was no dispute. The district court just said on its face this testimony was inadmissible, never comes in in the first place. At which point there's no dispute because there's literally no evidence. Exactly. And we don't argue with that, but we do take issue with the threshold determination that this was inadmissible. Well, can I clarify then just two things? One, you agree that it is your burden as the party seeking to compel arbitration. It's your burden to establish the existence of a valid agreement to arbitrate. Absolutely. So in the absence of that evidence, the right response is to deny the motion to compel. Correct. OK. And then the second is the district court also has an alternative holding, which I'm sure you'll get to. But just to walk through, if we affirm the exclusion of the declaration, the second holding becomes irrelevant and drops out of the case. Correct. OK. For this case. Of course. For this case. So with respect to the personal knowledge issue and the admissibility, we think there are really four different errors that the district court made. Two legal and two more sort of abusive discretion type errors. First on the legal errors, this court has in three published opinions adopted a presumption that a corporate officer is going to have personal knowledge of the acts of the corporation. That's Catalba, which was on Bank, Apex, and Bryant. Is that the end of the analysis? Because it can't be, right? Because it cannot be that Mark Zuckerberg has personal knowledge of everything involving MEDA, right? That is facially implausible. Well, but I think that actually helps us, Your Honor, because I think what the cases are really saying is, yeah, if Mark Zuckerberg comes in and says, this junior employee at Facebook or at MEDA earned $50,000 last year, we're not going to say, well, how would he know that? Well, he has ways of doing that. He's the CEO. He can check the records. I don't know why you don't rely on the fact that he said he had personal knowledge. He said he had personal knowledge. And why doesn't that end your argument? You know, it seems to me somebody says, I saw this at the traffic light, and I have personal knowledge about it. You can question whether the person and cross-examine him later. But as opening evidence, it seems to me that— Your Honor, I don't disagree with that. That's our sort of first point is he said he had personal knowledge. Now, I could imagine an extreme case where somebody says, I have personal knowledge of this. It could be just a form statement that is unsupportable. But he explained he's been there, and he looked at the records, and he saw this, and he knows the operation of this site, the design of the sign-up, and explained it. It seemed to me even—I don't know if we're allowed to look at the site, but we would probably see the same thing if we went in and looked at the site. We'd see the button that says, by hitting this button, you agree to the terms and conditions. That's right, Your Honor. He had personal knowledge about that. It's the company's site, and that's not a very extraordinary thing to say. That was going to be my third point. I think you end up twisting yourself into problems as you go on. I don't want to twist, Your Honor, so I'm not going to belabor it. I agree with everything Your Honor said. He said he had personal knowledge. He has every reason to have personal knowledge because of his corporate position. The things that he is testifying about are not the types of things that you wouldn't expect him to know. This is the service that ECS provides. They sell credit monitoring services. All he's saying is, in order to sign up, you go to our website, you put in your patient, and click the button. He basically described the online design, and that's it. It seems to me the online design is either that or it isn't that. He said it was that, and he knows it's that. Nobody said it wasn't that, so there was no evidence on the other side. I'm looking at this right now. He's testifying as to what the online design is. I'm looking at his declaration. He says, he's telling me what the design was on May 3, 2020, in a declaration that he is submitting on February 14, 2023. It can't be, I just logged on this morning and saw how it looks because that's three years too late. He's got to say, I can tell you what this looked like three years ago. That's why he says in paragraph one that he knows this through review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, and so on and so forth. He can do that based on the records. Of course, he had to check the records to know that Mr. Austin had signed up. He doesn't know that without looking. He can say, I put in his name, his address, his social security number. It popped up that he signed up on May 3, 2020. That part seems fine. The part that seems more iffy is if someone asked me, what did Uber's app interface look like three years ago? I mean, I know I don't work, but this seems like a bit of a materially different question then. I think we're pretty straightforward to how we get to he signed up, but then how do we get to how did this look three years in the past? That doesn't strike me as something that's all that obvious that a particular person would be able to testify to based on personal knowledge. So what I would say, Your Honor, to that is if they had a real question about that, and I don't know if it actually changed. The date is just there because that happened to be his date of enrollment. But that would have been the perfect question to ask him at deposition. How did you know it's the same version? You store the old versions, right? It's the type of thing you can ask if you have a follow-up question. They missed the chance to depose it. So let me just posit that I think this is a fairly aggressive exclusion ruling by a judge. He convinced me of that. But this is an abuse of discretion standard to review. And so the question is, what is the best case you can cite me for the profits? You know, you said 50 cases, but then I asked my law clerk to look into this. How many cases did anyone like? So the first thing I'm going to do is I'm going to exclude every single case where no one objected because the court did not rule in any of those cases. And it seems to turn out to be the vast majority of those cases. And to the extent courts overruled objections, what did they say in overruling objections? And those cases also tend to be pretty thin in terms of what people actually say. So what is your best case for the proposition that this is not simply an outlier to court decision and is not simply an aggressive use of the Federal Rules of Evidence, but it is a reversible abuse of discretion? Well, Your Honor, I would point to actually this court's decision in Apex. It's not an experienced case, but I think that's actually the best articulation of how this is supposed to work. Where the court said, you know, the president of the company came in and said, testified, you know, we never sent, we never got this invoice, or we never sent, I don't remember exactly what the fact was. Yeah. Something about an invoice. And the person objected and said, well, how do you know? And this court said, well, he's the president of the company. But we also said that was a small, like, family-owned company, right? No, it said he was, it says, there's one sentence that says he was the president of a small business for 30 years, and it cites Catalba and says, we presume that corporate officers know the things their corporations do, therefore, in the absence of any contrary evidence from the other side, we're going to assume he had a basis to testify about it. And again, I think the right way to handle that sort of inquiry is to say, all right, well, maybe there's some question here. Let's give them a chance to probe it in discovery. Not to exclude it out of the gate. What's really, I think, backwards about how things happened here is the court gave them the opportunity to go through discovery, document requests, interrogatories. We made two people available for deposition. And then at the end of that process, when none of it contradicted anything he had said, they went back and said, well, actually, it was fatally, facially deficient at the beginning, and none of the discovery can cure it. That just seems like it has to be the wrong way to approach it. I agree with all that. This does seem to have a little bit of a pox on everyone's house problem, though, because, like, there's nothing that would have stopped you from, A, deposing this individual, right? Well, we don't depose our own person. You could. Is there any rule that says you can't? That's what the declaration is, in a sense. Okay. Well, you also could, very obviously, have provided a declaration that has some more information, and you didn't do that either. Yeah. I can't tell you that this declaration could not possibly have been more detailed. It could certainly have been more detailed. Well, and in fact, I think you brought to our attention some of these later cases, some cases that have happened since this. Mm-hmm. So. Yes. We read those. We read those. Yeah, and we've added some sentences. You've added some language to your declaration. So, I don't know. I don't know if those cases help you at all, because all those cases tell me is that when you have a declaration that says more, courts let it in. I agree. We added a few sentences to try to avoid this problem going forward. But chronologically, the way this happened was we filed the motion of the declaration. Then they got discovery, and we went through discovery. And then they moved to exclude the declaration, at which point we said, what are you talking about? Everything he said he was able to say, and nothing in the discovery record casts any doubt on it. So, that was the chronology. It wasn't like, oh, we're going to go back and amend our declaration. That had already  That's actually a little more striking, because, I don't know. I was going to say, I've tried cases for over 20 years, and the question is, could I put a man on the witness stand and have him say this? And I would be totally shocked if it said, you can't put that man on because he can't testify that way. I'll ask this to your colleague, but it would be not only shocking, it would be something very strange in the trial process. He can say this, he can testify to this, and he can be cross-examined. And the question is, how do you exclude somebody preemptively from saying this? I can't figure out what the basis is. I mean, you have to assume cross-examination of some kind in order to do that, because he can say, I looked at the records, this is what our corporate records show, and I have personal knowledge of that. That's all he has to say. And now, step down. But you don't exclude the witness. Right. Well, that's why I said I think it's a pretty simple case that has gone off. Let me spend the last couple of minutes addressing the alternative holding, because that's a separate issue, a separate legal issue, where the court said essentially the website wasn't clear enough. This one is also an extreme outlier. I don't think there's any other court that has said that this website is a matter of law, is not clear enough to give rise to a binding agreement. And there have been more than 50, I think closer to 70 at this point. More importantly, this court has now decided a case that speaks very clearly to the standards. It's the Marshall v. Georgetown. Judge Harris is it. Yeah, that's right. And that adopted pretty clear standards for the first time in this circuit. And we clearly satisfy those standards, because the website clearly and expressly says, clicking the button constitutes assent. The language is right above the button. It's in bold. The terms of use is hyperlinked. The site, the design, as I understand it, has to steer you through the terms and conditions. If the site doesn't do that and gives you choices, you can't presume that everybody's going to be hitting different buttons. Right. So for example, if you have to scroll down to the bottom to see, oh wait, I'm agreeing to something here, then we can't draw that inference. That's not the case here, because it's right above the button. The terms of use are hyperlinked in blue so that everyone knows I can click on it and see what they are. He may not have clicked. I'm sure he didn't. But that doesn't change the fact that it's a binding contract. And again, this court said that in Marshall, said hyperlink is good enough. The button doesn't have to say, I agree. It can say continue or register or create your account. So I think most of their arguments on this score have been superseded by Marshall and should be reversed. This alternative holding also should be reversed for that reason. I assume that the P&V that the trial judge relied on, and I'm going to assume that the S is solid, Scuros v. TransUnion. Scuros, yes. What's the difference between them? Oh, yeah. Very good, Your Honor. So Scuros is the case that this court relied on from the Seventh Circuit. In that case, the website, TransUnion's website, nowhere said clicking the button is agreeing to the contract. It actually said something different. It said clicking this button gives us authorization to pull your credit report. And then they came in in court and said, well, actually, it also constituted agreement to this contract. And the Seventh Circuit said, well, you didn't tell them that. And if you don't tell them that, of course, you can't hold them to it later. But that's not how our website looks. You can, the court can look at the two screenshots and compare them. And they're not the same. Thank you, Your Honor. Thank you. All right, Ms. Garland. Good morning. May it please the Court. Jessica Garland for Mr. Austin. Experience position appears to be that the district court was required as a matter of law to accept Mr. Williams' declaration. But Mr. Williams' job is Vice President of Business Governance. And although he claimed to have personal knowledge... Let me just transpose this a little bit. We were in a courtroom during trial. And they call Mr. Williams to the stand. And he says, I'm the Vice President of this. I know the records. I've been here a long time. I've checked the corporate records. And based on my personal knowledge of what I've seen, this is the design of the site. And of course, it's not a very unusual design. And he describes the site. Do you exclude that witness preemptively? You can't let him say that from the stand. And he says, I have personal knowledge of this. Can you exclude that witness under any standard? I think that... In the courtroom now. I think that Rule 56E directs... Listen, you didn't hear my hypothetical. We're not under 56. I'm talking about in the courtroom. I'm bringing Mr. Williams to the stand. And this is what he testifies to. Can you move to strike all that evidence? Yes, if he can't make an affirmative showing of how he has the knowledge based on what business records... He's testifying to what he does know. And I don't... He says, I'm Vice President of the company or vice president or whatever officer. I know these records. I've looked at the corporate records. I've checked his account. He opened an account on March 3rd. I have personal knowledge of this. I saw that. And this is what our account looked like at that time. Now, that's what he says from the stand on personal knowledge. How do you exclude that? Well, I don't think that he said he looked at Mr. Austin's account. He said he looked... Well, he said he gave a specific date and he says, I have personal knowledge of that. And he obviously had... And he said he looked at corporate records. I mean, I don't... You've tried cases, haven't you? Not at trial, Your Honor. But I don't... I do think that it could be excluded. And that's because the district court... I have never... I tried cases for 22 years. I've never seen somebody excluded from the stand except an expert witness proffered under DOGRA. Well, I think what the district court should do is ask more questions to figure out if he had made the requisite affirmative showing. And that's what the district court tried to do here. It noted that Mr. Williams said in his declaration that if the judge had questions, he'd be happy to come testify. So the judge asked him to come testify and he said no. And then the judge noted... The judge got angry at that. There's a lot of going back and forth in this record that probably created a bad mood and the judge took it out. But the long and short of this though is that we're looking at a declaration that is just straightforward testimony that is done thousands or hundreds of thousands of times in court every day. And you don't exclude the witness from saying that. You exclude a question and say, did you see that or something? He says, I think the light was this. You don't get to testify to that. But that's what this declaration said. He says, I have personal knowledge and I'm an officer and I'm in a position to have personal knowledge of this. Our corporate records show this. And this is the design of the site, which is not a very sophisticated piece of information. Well, Your Honor, first of all, he didn't actually say that the exhibit was from his corporate records. And when the district court asked Experian... Did he say he consulted the records? He consulted. He didn't say what records. And the district court asked Experian if... So he doesn't have... You don't have to say that. I mean, that's cross-examination. He can testify to this. There's nothing that says he can't testify to it. I genuinely don't comprehend what rule of evidence is excluding this. You know, Rule 56 says you have to provide admissible evidence. Evidence admissible at trial. And it's a summary judgment. And you can put counter-affidavits in. You can take depositions. They can take depositions. But as it turns out, this is not illegitimate evidence. That has to be excluded. What rule of evidence do you exclude it under? I would exclude the business records under here, say, because there weren't any records identified. Business records are subject to being put in simply on authenticity. I think that... And there were no business records that he offered. So you can't exclude that. I said I looked at the business records. I agree that there were no business records offered that he said he looked at. But he didn't have to. But the problem is for evidence to be admissible that's based on hearsay evidence, there needs to be a showing that that hearsay evidence can be made admissible. And they didn't Is that your argument? Because here a corporate officer says I looked at the corporate records and this is what they showed. And they showed that he signed up on this date. I think that is not enough to make the requisite affirmative showing that this court has said numerous times is necessary. Indeed, the district court asked Experian, you produced numerous records. Are any of these records the ones that Mr. Williams looked at? And Experian said that it was not going to make that statement. It could not say that those are records he had looked at. So the district court did exactly what Rule 56 says. Rule 56E says, I quote, if a party fails to properly support an assertion of fact as required by Rule 56C, the court may give an opportunity to properly support or address the fact. And that's what the district court here said. He said, first, I'm going to order discovery. Presumption to this that he didn't support it. The question is, he said, I have personal knowledge. The man signed up on March X. He went through the account. We have an independent confirmation the guy signed up. And this is what our online design looked like. Well, we don't have independent confirmation he signed up because... We don't need a confirmation. I think that the problem here, Your Honor, is that the statement, I have personal knowledge, the district court found did not need the requisite showing of demonstrating he actually had that personal knowledge. So how do you demonstrate he's a liar without other evidence? He said, I had personal knowledge. And I think if he actually had personal knowledge, it wouldn't be very hard to explain why. If you know something... It may not be, but the question is, does it make that statement inadmissible? It does make the affidavit inadmissible if it's not based on personal knowledge. And it is experience burden and Mr. Williams' burden to make the showing that it was based on personal knowledge. Let's continue with the hypo. Imagine he's on the stand at trial. And he gets to the part... And imagine he gets on the stand at trial and he basically proceeds to read this document. Right. So his testimony at trial is reading this document or reciting this document. So then we get to paragraph three. And this paragraph three, he said, plaintiff enrolled in credit works. And then this is the part where he starts to describe the form. So I guess the hypothetical is he's on the stand and he starts to describe what Mr. Austin would have seen in the form. And then at that point, your client objects, lack of foundation. I'm not saying he can't say this. I'm not saying it's impossible for him to say this, but I'm saying that based on everything he said so far, he has not laid adequate foundation for how he can tell me what this website looked at. So do we think the right question is whether the district court not would have, but could permissively have sustained a lack of foundation at that point? Yes. And I think the district court could. I also want to note, Your Honor, that there wasn't going to be a trial here. No, I understand. But I think the hypo, because I think Judge Niemeyer is quite right, that rule 56 essentially says to use it in this context, it has to be admissible at trial. So therefore the question we have to hypothesize is if someone said this at trial, could a district court without abusing its discretion, sustain a lack of foundation objection at the point he starts describing the website? Yes. And I know that the district court has quite a lot of discretion. The way that this court has described the court's discretion in Evans is that what this court determines whether the district court's determination that portions of the affidavit contain statements that were not based on personal knowledge for clear error. Here, the district court looked at the paragraphs in the affidavit and noted there's no reason to expect that a vice president of business governance would know the back end code that showed whether a specific individual clicked on a specific button and saw a specific page in the ordinary course of business. And he also noted that Mr. Williams was unable to point to any document to support that, despite numerous discovery requests, despite the district court itself asking Experian whether any of the numerous documents that I had produced were the ones Mr. Williams was relying on. To the contrary, again and again, Mr. Williams and Experian was unable to say there was any specific document that provided that information. Can I ask you something not about the declaration, but about the documents? I have a question about some of the documents. The district court says they're all hearsay, which, with respect, strikes me as obviously and self-evidently wrong. So, for example, like, what the website said on the, like, assuming that we can lay adequate foundation that this is what the website said on a certain day, it seems transparently obvious to me that what the website said on a certain day is not hearsay because those statements aren't being offered for the truth of matter asserted. They're being offered to show what a person would have seen. That's, do you disagree with that? I think the issue with the documents that... Do you disagree with the fact that the contents of the website on a certain day are not hearsay, and to the extent the district court said they were, that is completely wrong? I understand that, Your Honor. You understand it? Yes, I agree. But I think there are two types of documents. There are the exhibits, and there are also the documents Experian produced. And Experian explicitly waived, not forfeited, but waived any reliance on those documents. The court again and again invited Experian to point to the specific documents that would support his motion to compel, and Experian again and again said no. I thought it's not a document. I thought it's online information. The agreement was formed by going online and going through the website, right? If there is an agreement. Yes, Your Honor. So there's no document. We're talking about a website and going through and agreeing, agreeing or not to the terms and conditions. Yes, Your Honor. All right. And he testifies to what the website showed. He actually never even said that the business records he's referring to are the exhibits attached. I said he testified to what the website showed. Yes, Your Honor. Yes. Well, what do you do with the fact that he actually used the system? Your Honor, I respectfully disagree. I don't believe that's what the record showed. To the contrary, he... Or point me to where in the record that your position is. Yes, JA 586 to 589. That's Mr. Austin's affidavit. He explained in that affidavit that he actually expressly told Experian that I, quote, did not agree to the CreditWorks contracts and terms, that he never saw that the information on the website that Experian claimed was there about informing him of the terms of use. Indeed, he said he didn't even know what CreditWorks or consumerinfo.com was before this case. And the district court found that as a whole, his affidavit indeed showed that there was no mutual assent to arbitrate. So I do think there is a question about what actually happened here. He went to Experian to get his statutorily required free credit report. And he'd never said that he made this agreement and clicked a button on CreditWorks. And it's Experian's burden, which I know it doesn't dispute that it is its burden to make that affirmative showing. And then it's also its burden to make an affirmative showing that its declarant has personal knowledge and that's all they were relying on is what the declarant said. I also want to note that my friend focused a lot on the deposition that wasn't taken. And I think the reason it wasn't taken was because Experian stonewalled a trial counsel below. The court noted, it found, as per Rule 56E, that on the face, the declaration did not make a showing of personal knowledge. So it followed Rule 56E and said, please provide some more. It ordered discovery. Again and again, Experian refused to produce any discovery. There were numerous status conferences and hearings where the court urged Experian to produce discovery. They noted at one of these hearings in March of 2023 that there was going to be a deposition taken. But Austin's counsel explained that before that deposition was taken, he needed at least some of the discovery material about Mr. Williams's job and why he would actually have information so he wasn't going in blind. He said, quote, I otherwise would be asking the same high-level questions and asking the discovery responses without preparation. And then I'll necessarily have to do the depositions again. And the court recognized that and the court ordered Experian to produce discovery. It did not. Instead, it stonewalled Mr. Austin's counsel. Why don't you have a motion to compel? There's a whole procedure to handle that, right? Well, the court ordered it. And then you can sanction that. You can also exclude items. You can attorneys fees, all kinds of things. But that's not what's before us. Well, I think the issue is that it is Experian's burden to make the affirmative showing. I think it's not fair. But you're describing disputes on discovery that are not before us. The only issue before us is whether the district court appropriately excluded the affidavit of Williams. And it didn't because as this court noted in Catawba, when an initial affidavit doesn't have enough information, the court can say, please provide more support for your personal knowledge assertion. And then someone just has to submit another affidavit that provides that additional personal knowledge and that can be enough. But they didn't do that here. And I know it's not hard to do. Are you disputing that the website showed what he said it showed at that time? That is what Mr. Austin has disputed that. He says that is not what he saw when he was trying to get his free credit report. We didn't see the terms and conditions. But there's a sentence right above the accept or whatever it is that says by clicking this button, you accept our terms and conditions. Your Honor, that's not the way that the website, as alleged by Experian, is actually set up. And I'm happy to turn to the formation question to respond to that. There's no, according to Experian, even assuming there's personal knowledge and he did see this website, that's not what he would have seen. The website that Experian describes does not have the terms, the notice of terms and conditions. It says, what's it say right above it? Right above it, it says I may withdraw this authorization at any time by contacting ECS. And then above that, it has a number of bullet points that describe things that could be the terms and conditions. It's only above that paragraph of text that it notices that there are terms of use. What does it say? Doesn't it say by clicking? I'm looking at it right now. Does it not say by clicking create your account? This is all in bold, colon. I agree and accept to the terms of use, which are in blue, which to anyone who's ever used the internet is a hyperlink, as well as acknowledging receipt of your privacy policy, also in blue, and your ad targeting policy, which is also in blue. Yes, and then there's other text before you get... I know, but the question is, isn't that an agreement? If you click the button below it... I don't believe that this website would put a reasonably prudent user on inquiry notice. And that's because to determine whether a prudent user is on... It says you agree to our terms and conditions by hitting the button? No, the button says create your account. I know, but it says right above it by clicking create your account. And then there's a button that says create your account. So you would understand when you click the button that says create your account that I'm clicking the button labeled click your account. I think a reasonably prudent user who goes to this website thinking they're getting a government statutorily mandated free credit report could think they don't have to give up any rights to get that statutorily required free credit report. And so that the bullet points... So you didn't read what Judge Huygens just read. I don't have it right here in front of me. But it says by clicking that button, I agree to the terms and conditions, right? I think the issue is it could be the three... No, that's not an issue. My question is factual. It does say that, but then underneath that, it has three bullet points that I think that someone could reasonably assume are the terms and conditions. And that's the issue. It's the way that the... Despite the fact that, again, it's in blue in a way that would make clear to any person who's ever used the internet that that's a hyperlink. At the very least, I think it could be reasonable to think that's a summary of what the terms and conditions are. Again, I think because someone's coming to this website thinking this is a statutorily mandated free credit report, that they wouldn't be thinking they have to give up their rights or agree to an arbitration... It's not giving up rights. It's agreeing to terms and conditions. And so... They may be very good. And yes... You don't know what they are. You have to click on the blue underlined portion. I think that the bullet points are... But the fact is you agree by hitting the button. That's the big deal. Well, I think that it could be that the bullet points of reasonably prudent user would think those are the terms and conditions. And I also know all of the cases that my friend relies on, on Meyer, Seldin, Edmondson, they all focus on the reason that the interfaces in front of those courts were clear enough was because there was no other confusing language. There was no clutter. And the notice that there were terms and conditions was right next to the button. So I think the difference here is, first, someone is coming to this webpage they're getting a free product that they don't have an ongoing relationship with, like with Uber. And so that this could be all the terms and conditions they need to be signed to are the ones in bullet points under that. Can I ask you to address your friend's argument for why the Seventh Circuit case is totally distinguishable? Let me preface it by saying, I think he's right that the Seventh Circuit case is totally distinguishable. Because that decision says, by clicking X, you agree to Y. And now you're being told by clicking X, you actually agree to Z too. And you're like, that's not what it literally says. So the only case the district court relies on, strikes me, is transparently distinguishable. So do you want to defend the district court's reliance on that case or go somewhere else? I recognize the interface there is different, Your Honor. I think the principles that the court was focusing on there. But one of them is, I didn't agree to that. And the other one is, maybe I didn't see that I agreed to. Your argument strikes me much more in the vein of, I could have reasonably believed I didn't agree to that. The Seventh Circuit case, that if the person has a much better argument, I literally didn't agree to that. I understand that. But I think the point from the Seventh Circuit case is that the court questions whether the interface quotes could mislead the consumer. And I think it could here for different reasons. Because the consumer might read it and it doesn't say what the company is now saying it says. I recognize that it does say, has different text here. But I still think it could mislead the consumer precisely because someone's coming to this page. So let me ask you this typo. Let's imagine that the words, by clicking your account, I totally understand that in the real thing, there's this paragraph of text and the three bullet points. Delete all of those. So it says, by clicking your account, and then it says precisely what it says. And directly below that, there's a pink bar that says, create your account. You would definitely lose that case, right? I think it'd be a much harder case, but I think we would likely lose, Your Honor. I would like to just return for one more moment to the personal knowledge question. I want to emphasize that this isn't some ticky tacky case. There's an important reason to make experience meet its burden. That's because when a company has total control of records that they're pulling from the bowels of their record system from years ago about what a website interface looked like, there's a real risk, not just for fraud, but simply for error. And as experience, website has changed the interface over the years, and also the terms and conditions have changed. Indeed, Experian, in its 28-J letter, cited a number of cases that it got confused that actually have a different interface. For these reasons, Your Honor, the court should affirm the decision below. Thank you. All right. Thank you, Ms. Dunn. Mr. Vaughn? Thank you, Your Honor. Just a couple of quick points. First, on the records and the discovery, as Judge Meadmeyer said, if we had not produced the discovery, I am certain there would have been a motion to go down. It looks like it was a pretty messy procedure before the district court. And it looks like the district court thought that that was in your lap. It was a very contentious period of discovery, no doubt. But at the end of it, we had given them what they asked for, which is why they didn't actually file a motion to compel at the end of the day. They said, all right, well, now we're just going to move to exclude the declaration in the first place. And I would just point the court to the spots in the JA where the discovery materials actually are, so we don't have to have a dispute about it. Court can see them. So can I ask you the question that I asked your friend on the other side? Let's imagine this guy takes the stand and starts reading this deposition or declaration, and he gets to the part where he describes the thing, and they stand up and they say, objection, lack of foundation. And again, I am not saying that it's impossible for the student to say this. I'm not saying he doesn't have this knowledge. I'm not saying he couldn't lay the foundation that would render it admissible. But based on what you have said until this point, there is a lack of foundation sufficient to support him being able to say this. Do you think the district court who sustained that lack of foundation objection and said, again, I'm not telling you that he can't say this. I'm going to tell you I'm going to need a little bit more information before he can just start talking about what the website looked like three years ago. That district judge abuses his or her discretion? So let me give you two answers. One, yeah, I actually think that the answer is yes, based on the material in paragraph one. I think that's what any district court would expect in that situation to be able to provide that testimony. But I will also say that in this posture, where we are at the declaration phase, and the court then authorizes discovery to probe the basis for the declaration, that that's not really the question we should be asking. We should be saying, in light of everything that happened, that followed, did they get the assurances they needed and were entitled to, to the extent it was more than he initially provided? And they did. And again, I would point the court to, of course, there wasn't a deposition because they didn't take it, but the documents, JA1946, we have over 100 pages of spreadsheets documenting every time he interacted with the service. JA2564, we have hundreds of pages of additional spreadsheet documents that actually identify every click on the website that he, when he first opened the account, every click. Didn't you waive every single bit of this? Like, didn't you basically say, having excluded our declaration, we're not, it sounds like that's all the stuff you totally waived before the district court. So let me address, that was the next point I wanted to make. We absolutely waived the right to argue that that was independently sufficient to support the motion to compel arbitration. We did that. But once we lose the declaration, we can't do it. Yes, and we did that because this comes up a lot for us. We have sued a lot, and it's important to us that we can do this through a declaration because that's the easiest, cheapest, fastest way to do it. It doesn't get into sealing records of social security numbers and all sorts of other things. So the principle was important. So we waived that, but we did not waive the argument that to the extent they had any issue with the declaration, the right way to address that concern was through the discovery that they had the opportunity to do that, that it didn't actually substantiate any of their hypothetical concerns about the declaration, and that that should further corroborate that the court erred by striking it. So there's a difference between those two things. The last thing I'll say is, if the court does look at Mr. Austin's declaration, it's worded very carefully, but I think the takeaway is clear. He says, and this is a J585, he says, I inputted my information to request my free report. I never agreed to purchase anything. That, of course, is true because it was free. Then he said, I used the Experian website to look at my credit report when I first provided my information, and I believe a couple of additional times for the same purpose. So he is admitting that he used the service, and he says he never saw the terms of use arbitration agreement, which makes perfect sense if he didn't click the hyperlink. And then he says, I don't recall seeing language to inform me of this terms of use agreement. Of course, the fact that he doesn't recall it, no court thinks that's enough to create a disputed material fact as to whether it was there. So sorry for going over, Your Honor. Thank you for your time. All right. Thank you. We'll adjourn court for the day, come down and greet counsel, and ask counsel if they would approach the bench to greet Judge Floyd. The honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd